IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VERTICAL BRIDGE DEVELOPMENT, LLC,**<br><br>*Plaintiff*,<br><br>v.<br><br>**ZONING HEARING BOARD OF THE TOWNSHIP OF DOYLESTOWN,** *et al.*,<br><br>*Defendants*. | Civil Action<br><br>No. 19-cv-494 |

**MEMORANDUM OPINION**

**GOLDBERG, J.**                                                                                                                       **January 14, 2022**

Plaintiff Vertical Bridge Development, LLC ("Vertical Bridge") develops wireless communications facilities, commonly known as cell towers. As part of that business, Vertical Bridge leased a parcel of land in Doylestown Township, Pennsylvania and applied to the Township's Zoning Hearing Board (the "Board") for permission to build a tower. After the Board denied Vertical Bridge's application, Vertical Bridge brought this lawsuit claiming the Board's decision violated the Telecommunications Act of 1996, 47 U.S.C. § 332.

Both parties have moved for summary judgment. Having reviewed the Board's decision and the applicable law, I conclude that the undisputed facts show Vertical Bridge is not entitled to relief. I will therefore deny Vertical Bridge's motion for summary judgment and grant the Board's motion for summary judgment.

**I.      FACTS**

The following facts are undisputed:

- Sometime before July 2018, Vertical Bridge leased a parcel of land at 754 Edison Furlong Road in Doylestown Township, Pennsylvania (the "Parcel"), which contained a single residential building. Vertical Bridge proposed to demolish this structure and erect a 120-foot-tall cell tower, which would support antennas for two federally licensed wireless service providers. Around the tower would be an equipment compound, fences, parking, and an access road. (Vertical Bridge's Statement of Facts ¶¶ 3, 6, 19, 21.)

- The Parcel was located in Doylestown Township's C-1 Commercial Zoning District. (Vertical Bridge's Statement of Facts ¶ 7.) The applicable zoning code permits tower-based wireless communications facilities in the C-1 District as a "special exception," which means an applicant seeking to construct such a facility must make an application with the Board and demonstrate compliance with certain enumerated criteria. See Doylestown Township Code § 175-16F(c)[1][a]. Among those criteria are that the proposed tower be located to fill a "significant gap in wireless coverage," id. § 175-16F(c)[1][b], that it be designed at the minimum functional height, id. § 175-16F(c)[1][c], and that it comply with "the minimum lot area and yards" for the applicable zoning district, id. § 175-16F(c)[1][d].

- Vertical Bridge applied to the Board on July 26, 2018, and a hearing commenced on September 17, 2018 and was completed December 17, 2018. As part of the written materials for its application, Vertical Bridge provided a "Site Plan" that listed the required and proposed front, side, and rear yard "setbacks" between the planned construction and the edge of the property:

| ZONING INFORMATION | | | |
|---|---|---|---|
| JURISDICTION: | DOYLESTOWN TOWNSHIP | | |
| ZONING: | C1, COMMERCIAL DISTRICT | | |
| DIMENSION | REQUIRED | EXISTING | PROPOSED |
| MINIMUM LOT AREA | 20,000 SQ. FT. | *19,029 SQ.FT. (R.O.W.)<br>*19,696 SQ.FT. (DEED) | NO CHANGE |
| MINIMUM LOT WIDTH | 100 ' | * ±45' | NO CHANGE |
| MAXIMUM IMPERVIOUS SURFACE AREA | 40% | ±27% | ±39% |
| FRONT YARD SETBACK | 50' | ±145' | ±228' |
| SIDE YARD SETBACK | 20' | * ±9/3' | ±9' |
| REAR YARD SETBACK | 25' | ±116' | ±22' |
| SIDE/REAR YARD ABUT. RESIDENTIAL SETBACK | 50' | ±116' | ±50' |
| LOT AREA: 0.437± ACRES (R.O.W.)  0.452± ACRES (DEED) | | | |
| (ALL MEASUREMENTS ARE IN FEET ± UNLESS OTHERWISE NOTED)<br>* PRE-EXISTING NON-CONFORMITY | | | |

(Exhibit D to Vertical Bridge's Motion for Summary Judgment.) In the above table, the side and rear yard setbacks are listed as 9 and 22 feet, respectively. Under the code, the minimum requirements are 20 and 25 feet. Doylestown Township Code § 175-68A.

- The Site Plan also included a diagram with measurements for the setbacks:

2



(Id.) The diagram shows the side and rear yard setbacks, labeled "S.Y.S." and "R.Y.S.," as 20 and 25 feet.

- During the hearing before the Board, Vertical Bridge's professional engineer, Gary Lucas, explained that the setback numbers on the diagram were measured from the tower and its "concrete pad," whereas the setback numbers in the table were measured from the security fence. The numbers in the table were therefore smaller because the fence would be closer to the boundary of the property. Lucas stated that, in his view, setbacks should not be measured from fences; rather, the larger measurements on the diagram reflected the correct way to measure setbacks and the proposed construction therefore met the minimum setback requirements. (Exhibit A to Vertical Bridge's Motion for Summary Judgment, September 17, 2018 Hearing Transcript, at 25-28.)

On January 3, 2019, the Board produced a written decision denying Vertical Bridge's application. (Exhibit B to Vertical Bridge's Motion for Summary Judgment (hereinafter "Board Decision").) The Board found that Vertical Bridge had failed to satisfy the criteria for a special exception for six reasons: (1) Vertical Bridge failed to demonstrate that there was a "significant gap in wireless coverage" in the area of the proposed tower, (Board Decision, Conclusions of Law, ¶ 6); (2) Vertical Bridge failed to demonstrate that, even if there was a gap in wireless coverage, the proposed tower was the "least intrusive means" of filling it, (id. ¶ 11); (3) Vertical Bridge failed

3

to demonstrate that the proposed tower would be constructed at the "minimum functional height," (id. ¶ 12); (4) the proposed tower would not fit in with the character of the neighborhood, (id. ¶ 16); (5) the Parcel was smaller than the minimum lot size of 20,000 square feet, (id. ¶¶ 17-18); and (6) the proposed construction did not meet the minimum setback requirements along the side and rear of the Parcel, (id. ¶¶ 21-27).

With respect to the setback requirements, the Board viewed Vertical Bridge's Site Plan to include side and rear yard setbacks of 9 and 22 feet respectively. The Board determined that these numbers were below the minimum requirements of 20 and 25 feet for the C-1 Commercial District. (Board Decision ¶¶ 21-27.) The Board did not mention the setback measurements in Vertical Bridge's diagram, discuss how setbacks should be measured, or evaluate the hearing testimony in which Vertical Bridge's engineer argued setbacks should be measured from the tower and its concrete pad rather than from the fence. Nonetheless, my task is not to second-guess how the Board reached its decision, but, rather, to evaluate whether that decision is supported by substantial evidence.

Vertical Bridge then brought the present lawsuit, and the parties cross-moved for summary judgment. I held oral argument on the motions and received supplemental briefing regarding certain issues. For the reasons stated below, Vertical Bridge's motion for summary judgment will be denied and the Board's motion for summary judgment will be granted.

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is evidence from which a reasonable factfinder could return a verdict for the non-moving party, and a dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

III.  **DISCUSSION**

The Telecommunications Act of 1996, 47 U.S.C. § 332, places certain restrictions on the manner in which state and local governments may regulate the construction of wireless communications facilities. 47 U.S.C. § 332(c)(7)(B). One such restriction is that any decision by a local government denying a request to construct a cell tower must be supported by "substantial

5

evidence." 47 U.S.C. § 332(c)(7)(B)(iii). A person claiming to be adversely affected by the decision of a state or local government inconsistent with those restrictions may bring a suit for relief. § 332(c)(7)(B)(v). Vertical Bridge argues the Board's decision denying its application was not supported by substantial evidence and should be vacated.

As noted above, the Board found that Vertical Bridge's application failed to comply with the Doylestown Township Code in six respects. The parties dispute whether each of those six findings was supported by substantial evidence. But Vertical Bridge concedes the Board's decision must be upheld if any one of those six grounds is supported by substantial evidence. See Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 495 (2d Cir. 1999) (analyzing "whether the Board possessed substantial evidence on one or both … grounds" for its denial).

For the following reasons, I conclude that the Board's decision that Vertical Bridge's proposed construction did not meet the minimum side and rear yard setback requirements for the C-1 Commercial District was supported by substantial evidence. I therefore need not reach the other five grounds for the Board's decision.

"[T]he first step for the court in a case in which the provider of wireless services is relying on state or local law is to identify the relevant issues under that law." Omnipoint Comms. Enterprises, L.P. v. Zoning Hearing Bd. of Easttown Twp., 248 F.3d 101, 106 (3d Cir. 2001). "If those issues require findings of adjudicative fact, the local authority's resolution of those factual issues must be supported by substantial evidence." Id. The state law as found by the zoning board "is not subject to deferential judicial review." Id.

It is undisputed that Vertical Bridge provided the Board with a Site Plan in which the side and rear yard setbacks were 9 and 22 feet respectively if measured from the security fence but 20 and 25 feet if measured from the tower and its associated equipment. (See Exhibit D to Vertical

Bridge's Motion for Summary Judgment, Site Plan.) The Board denied Vertical Bridge's application in part because it treated 9 and 22 feet as the applicable setbacks. (See Board Decision, Conclusions of Law, ¶¶ 20-22.) Accordingly, the "relevant issue[] under [state] law" is whether required setbacks in the C-1 Commercial District may include fences. Omnipoint Comms. Enterprises, 248 F.3d at 106.

>The setback requirements for the C-1 Commercial District are imposed as follows:
>
>The following minimum dimensional requirements shall apply, unless otherwise specified in Article IV, in which case the requirements of Article IV shall apply: … Minimum yards: … Side: 20 feet. … Rear: 25 feet.

Doylestown Township Code § 175-68A. Nothing in Article IV specifies different setback requirements, and consequently the above requirements apply.

Vertical Bridge argues that its proposed construction complies with the above requirement because it would include side and rear yards extending from the boundary of the property to the tower and its associated equipment. The Board responds that this space does not qualify as a "yard" because it contains the security fence, and, therefore, Vertical Bridge has not satisfied the minimum yard requirements. In the Board's view, the largest yard Vertical Bridge could claim runs from the boundary of the property to the fence. Thus, in analyzing the setback issue, I must decide whether, under the Doylestown Township Code, a yard in the C-1 Commercial District may include a fence.

>The Zoning Code defines a "yard" as:
>
>An open, unoccupied space on the same lot with a building or other structure or use, open and unobstructed from the ground to the sky except for vegetation and accessory uses and/or structures to the extent specifically permitted by this chapter.

Doylestown Township Code § 175-9. Applying the plain language of this definition, ground containing a fence is not "unoccupied," nor is it "open and unobstructed from the ground to the sky," and therefore fails to qualify as a yard. As to the exception for permitted accessory structures,

7

Vertical Bridge has not cited, and I have not found, any provision of the Doylestown Township Code "specifically permitt[ing]" fences as accessory structures in the C-1 Commercial District.

Because a "yard" as defined in the Code may not contain a fence, the side and rear yards of Vertical Bridge's proposed construction run from the property boundaries to the fence, which makes them 9 and 22 feet, respectively. The property therefore does not contain a side yard of at least 20 feet and a rear yard of at least 25 feet as required by Doylestown Township Code § 175-68A. Thus, there is substantial evidence that Vertical Bridge's application was correctly denied for failure to meet this requirement.

Vertical Bridge offers three arguments in response. First, Vertical Bridge asserts it would be "absurd" to require open space between a fence and the property boundary. Vertical Bridge posits that setbacks serve to keep safe distances between uses, a rationale inapplicable to fences as fences pose no danger to people near them.

But the Doylestown Township Code does not state the policy behind the setback requirement. And it is not obvious that setbacks could not serve additional purposes such as ensuring access for emergency vehicles. In addition, for residential districts, the code expressly permits fences as "accessory uses." See Doylestown Township Code § 175-16H(3)(4); see also § 175-9 (allowing yards to contain "accessory uses and/or structures to the extent specifically permitted by this chapter"). The absence of a similar provision for the C-1 Commercial District implies that the restriction on fences is intentional.

Second, Vertical Bridge points to the definition of "rear yard" as "[t]he open unoccupied space between the rear building line and the rear lot line for the full width of the lot." Doylestown Township Code § 175-9. Vertical Bridge argues this definition requires the rear yard setback to be measured to the "rear building line" rather than the fence. However, as with the definition of

8

"yard," the definition of "rear yard" requires the space to be "unoccupied," which would exclude the fence.

Third, Vertical Bridge cites the Commonwealth Court's decision in Klein v. Lower Macungie Twp., 395 A.2d 609 (Pa. Cmwlth. Ct. 1978), which upheld a board decision permitting "tennis courts, with incidental wire enclosures and lights" in the required yard areas under the zoning code of Lower Macungie Township. Id. at 611. There, the court determined that Lower Macungie's definition of a yard, "open space unobstructed from the ground up," should be read together with its definition of a "structure," a "combination of materials assembled, constructed or erected at a fixed location including a building, the use of which requires location on the ground or attachment to something having location on the ground." Id. Since tennis courts were not "structures" under this definition, the Commonwealth Court found that they did not "obstruct" the yard and were therefore permitted. Id.

Here, even if I were to read Doylestown Township's definition of a "yard" in combination with its definition of a "structure," the latter includes "[a]ny man-made object having an ascertainable location on or in land or water, whether or not affixed to the land." Doylestown Township Code § 175-9. Fences are "structures" under this definition, and as such the reasoning of Klein does not apply.

I therefore conclude that Vertical Bridge has not shown a lack of substantial evidence supporting the Board's conclusion that the proposed construction did not comply with required side and rear yard setbacks. This ground is sufficient to support the Board's decision denying Vertical Bridge's application.

## IV. CONCLUSION

Because the undisputed facts show that the Board's decision was supported by substantial evidence, I will deny Vertical Bridge's motion for summary judgment and grant the Board's motion for summary judgment.

An appropriate order follows.